Lois BOURQUE

v.

STOP & SHOP COMPANIES, INC.

No. 2001–259–Appeal.

Supreme Court of Rhode Island.

Jan. 16, 2003.

Frederick A. Costello, Warwick, for plaintiff.

CharCretia V. DiBartolo, Shelia High King, Boston, MA, for defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

Concluding that a supermarket had coerced an alleged shoplifter into signing a release by threatening to detain her until she did so, a Superior Court jury returned a civil verdict against the supermarket, finding it liable for damages. The defendant supermarket, Stop & Shop Companies, Inc. (Stop & Shop), appeals from the judgment for damages in favor of the plaintiff, Lois Bourque, in this action for false imprisonment, false arrest, and extortion. A single justice of this Court ordered the parties to show cause why we should not decide this appeal summarily. Because they have not done so, we proceed to a decision at this time.

Stop & Shop raises several issues on appeal. First, it argues that the trial justice erred by denying its motion for judgment as a matter of law on the basis that plaintiff waived her right to sue Stop & Shop when she signed a written waiver that Stop & Shop provided to her after its security personnel apprehended her for suspected shoplifting. The document plaintiff signed specified that she acknowledged "appropriating" merchandise without paying for or intending to pay for it, and that, in consideration for Stop & Shop's agreement to "release" her and "permit" her to leave the premises, she released, waived, and discharged her right to sue Stop & Shop for any claims resulting from her apprehension and questioning. The trial justice decided that this language exceeded what G.L.1956 § 11–41–21(c)(1)[1] allowed because it required plaintiff to admit that she stole merchandise from the store in exchange for obtaining her freedom from the store's deten-

---

1. General Laws 1956 § 11–41–21(c)(1) provides as follows:

 "A merchant may request a person detained for shoplifting to sign a statement waiving his or her right to bring a civil action arising from the detention in return for a signed statement from the merchant waiving the right to bring criminal charges based upon the alleged shoplifting. Any statement shall state in writing in large print at the top of the form that the person detained has a right to remain silent and a right not to make or sign any statement and a right to call an attorney."

tion.[2] In addition, it purported to afford Stop & Shop the right to detain her if she did not sign the release. Furthermore, he ruled, because plaintiff did not voluntarily sign the waiver, her signature was coerced and, therefore, the waiver was invalid.

 In reviewing a decision on a motion for judgment as a matter of law, this Court is bound to apply the same rules and standards as the trial justice. *DeRobbio v. Stop and Shop Supermarket,* 756 A.2d 209, 211 (R.I.2000) (per curiam) (citing *Mellor v. O'Connor,* 712 A.2d 375, 377 (R.I.1998)). We must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable favorable inferences from that evidence in that party's favor without weighing the testimony or assessing the witnesses' credibility. *See, e.g., Barone v. The Christmas Tree Shop,* 767 A.2d 66, 68 (R.I.2001). "After examining the evidence * * * and drawing all reasonable inferences in favor of the nonmoving party, the [trial] court may grant a motion for judgment as a matter of law only if there are no issues of [material] fact upon which reasonable minds may differ." *Id.*

 With respect to the written waiver, we agree with the trial justice that the language used in Stop & Shop's waiver form exceeded what § 11–41–21(c)(1) allowed because it included a confession of wrongdoing on the part of the detained customer. Any person signing this document waived the right to sue the store for false arrest, negligence, and other similar claims for damages, and Stop & Shop in return waived its right to bring criminal charges. But, in addition, the waiver form also required the person signing it to acknowledge misappropriating certain merchandise from the store without paying or intending to pay for it. Thus, the form included the following statement: "I have acknowledged appropriating certain merchandise for my own use without paying for or intending to pay for the merchandise."[3] But § 11–41–21 does not allow the merchant to include this type of statement in the waiver document. Upon reading the statute, it is clear to us that this type of acknowledgment is not consistent with the law. The statute clearly states in § 11–41–21(b) that "[a]ny person so stopped by a merchant * * * shall promptly identify himself or herself by name and address. *Once placed under detention, no other * * * statement, except as provided in subsection (c) of this section, shall be elicited from the person * * *.*" (Emphases added.) We have stated repeatedly that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Pezzuco Construction, Inc. v. Melrose Associ-*

**2.** The trial justice stated:

"So, the waiver presented to her, on its face, does not comport with the statute; and, indeed, the waiver, in my view, unlawfully arrogates to Stop & Shop a right that the law does not give them, namely, to detain the person if they don't sign it. * * * [T]here is evidence before this jury that would permit this jury to conclude that the plaintiff was correct in believing that she could not leave the room without signing it and that Stop & Shop had put her in that circumstance and had created that belief on her part that she is not hallucinating or * * * making outlandish conclusions about her liberty and the fact that it was conditioned on her signing this document. The document tells her that * * * if you don't sign this document, you can't leave."

**3.** The trial justice ruled that "[t]he statute d[id] not say that the merchant may request a declaration of wrongdoing on the part of the person detained in return for a promise from Stop & Shop to let that person out of their custody and grant them the liberty to leave the premises."

*ates, L.P.,* 764 A.2d 174, 178 (R.I.2001) (quoting *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998)). Applying the statute as written, we hold that the trial justice was correct in deciding that the language in Stop & Shop's waiver form far exceeded what § 11–41–21 allowed.

■ Section 11–41–21(c)(1) provides that a merchant *may request* a person detained for shoplifting to sign a statement waiving his or her right to bring a civil action in return for a signed statement from the merchant waiving the right to bring criminal charges against the customer. In this case, however, Stop & Shop did not merely request plaintiff to sign such a document. The evidence supported the conclusion that defendant's security personnel pressured plaintiff into signing the release by leading her to believe that she had to sign it before she would be allowed to leave the store. After one of the detectives looked through her pocketbook, and after plaintiff appeared ready to leave the interrogation room, a security guard allegedly told her: "Wait, wait a minute;" "You can't go;" "You got to sign this." As a result, she reasonably believed that she could not depart from the store if she did not sign the document because the security officer told her that if she did not sign it she could not leave. Based upon this evidence, the trial justice correctly concluded that the jury could find that the store coerced plaintiff into signing the release. Therefore, the trial justice appropriately denied Stop & Shop's motion for judgment as a matter of law.

■ Second, Stop & Shop argues that there was no evidence of extortion or coercion on its part, and therefore the trial justice should have granted its motion for judgment as a matter of law and for a new trial. In his charge to the jury, the trial justice explained as follows:

"So, the so-called deal or trade-off and the only one that is permitted of a merchant is to say, 'Look, you can sign this paper and you won't sue us and we'll sign it, also, and we won't prosecute you as being a shoplifter.' The law does not permit or authorize a merchant to say, 'You must sign this paper and then we'll let you leave the room.' So, that is not authorized by our Legislature. It is unlawful to continue to detain a person even if the initial stop was all right and even if the initial detention was done lawfully. The merchant may not continue to detain a person unless and until they sign a paper admitting shoplifting or saying that, 'You can only leave the room if you sign this document.' That is not a fair trade-off or not a question of fairness. It's not the law. The law does not permit that kind of a trade-off, so to speak."

Furthermore, he explained that plaintiff asserted that she was the victim of extortion, "meaning that Stop & Shop, through its store detectives, applied improper force or used improper threats to get her to do something she didn't want to do, namely, sign a paper admitting that she shoplifted and that she wouldn't sue them." He continued to explain and define extortion in his instructions. Significantly, Stop & Shop did not object to these instructions. As a result, they became the law of the case and the jury is presumed to have followed them. *See State v. Perry,* 770 A.2d 882, 885 (R.I.2001).

■ When answering the interrogatories posed to them by the court, the jury indicated that it found that Stop & Shop "unlawfully coerce(d) plaintiff, Lois Bourque, to sign the release." This was a question of fact. In denying Stop & Shop's new-trial motion, the trial justice ruled that plaintiff was a "credible witness," whereas the two security officers

were not. "When a trial justice has reviewed the evidence and commented on the credibility of the witnesses," as this justice did here, we will not disturb his or her ruling on a new trial, unless we determine that "the trial justice has overlooked or misconceived material and relevant evidence or was clearly wrong." *Kelly v. Rhode Island Public Transit Authority*, 740 A.2d 1243, 1250 (R.I.1999). Here, we have no indication that the trial justice overlooked or misconceived any material or relevant evidence, much less that he clearly was wrong. Thus, we will not disturb his decision to deny Stop & Shop's motion for a new trial.

■ Next, Stop & Shop asserts that the trial justice's instructions on the shopkeeper's privilege were erroneous. Specifically, it argues, "the trial court incorrectly instructed the jury that the waiver form used by Stop & Shop in this case was unlawful." But Stop & Shop has not referred us to a specific place in the trial transcript where this error allegedly occurred. In addition, its objection to this part of the charge did not adequately alert the trial justice to an alleged error. Stop & Shop cryptically objected to this portion of the charge by stating, "when you were reading along, you went on to say what was not in the law or you—on the signed statement." In *Patino v. Suchnik*, 770 A.2d 861 (R.I.2001), we explained that even if it were assumed that a charge was erroneous because the court insufficiently defined the law, this Court will not reverse if, as here, the objection to the instruction was not "specific enough to alert the trial justice as to the nature of his alleged error." *Id.* at 866–67 (quoting *Majewski v. Porter*, 121 R.I. 757, 764–65, 403 A.2d 248, 252 (1979)). In addition, Rule 51(b) of the Superior Court Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, *stating distinctly* the matter to which the party objects and the grounds of the party's objection." (Emphasis added.) No such specific objection was made in this case with respect to the trial justice's instructions concerning the waiver form.

■ Nevertheless, the trial justice's charge on this issue, as outlined above, did not draw any conclusions for the jury on whether the release was unlawful. In an attempt to explain what the law will and will not allow, the trial justice merely defined and provided examples of what was impermissible under the statute.

■ Stop & Shop next challenges the Superior Court's ruling that a licensed social worker was qualified to diagnose post-traumatic stress disorder (PTSD) and to give her professional opinion about that diagnosis at the trial. For support, Stop & Shop relies on this Court's rulings in *Vallinoto v. DiSandro*, 688 A.2d 830 (R.I. 1997) and *Ouellette v. Carde*, 612 A.2d 687 (R.I.1992).

In *Vallinoto* this Court stated that the "implicit holding of *Ouellette*" is:

> "absent the close working relationship between the social worker in that case and the physician, and the physician's supervision involved therein, the social worker would not have been able to testify concerning the psychotherapy sessions in such detail * * *." *Vallinoto*, 688 A.2d at 840.

This Court also said, however, that upon remand for a new trial, if the social worker is able to "present sufficient qualification[s]," she would be able to testify about the statements of her patient when she sought psychological treatment and diagnosis. *Id.*

Here, the social worker testified that she was a licensed clinical social worker

who provided psychotherapy to her patients. She said that she was licensed and "obligated" to provide mental health diagnoses such as stress, depression, and anxiety. Furthermore, she explained that when seeking payment from a third-party insurer, the insurance company did not require diagnosis and treatment services to be rendered by someone with a higher medical degree than herself. Most significantly, she explained that she worked along with a psychologist.

█ In denying defendant's motion *in limine* to exclude her testimony, the trial justice ruled that this particular social worker possessed the qualifications to testify about plaintiff's mental condition in this case. *Cf. In re Jean Marie W.*, 559 A.2d 625, 630 n. 8 (R.I.1989) (affirming trial court's admission of testimony from a social worker concerning her diagnosis of a patient's sexual abuse). Based upon the saving language in *Vallinoto* and the social worker's professional working relationship with a psychologist, this ruling was correct. Moreover, because other medical evidence also supported the social worker's PTSD diagnosis, this evidence was cumulative. Thus, even if the court had erred in admitting her testimony, it would have been harmless error.

█ Last, Stop & Shop argues that the award of punitive damages was inappropriate here. The plaintiff did not request punitive damages for the counts related to extortion, and therefore, Stop & Shop contends, the jury should not have awarded them to her. The availability of punitive damages is restricted in this jurisdiction and the standard for imposing such damages is a rigorous one. *Mark v. Congregation Mishkon Tefiloh*, 745 A.2d 777, 779 (R.I.2000). The party seeking punitive

damages carries the burden of producing "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality" that should be punished. *Id.* at 779 (quoting *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I. 1993)). Initially, the trial justice determines whether the party seeking punitive damages has met this high standard to support awarding such damages; thereafter, it is within the trier of fact's discretion to determine whether and to what extent punitive damages should be awarded. *Id.* at 780–81.

█ First, it should be noted that counts 1 and 2 of the amended complaint alleged false imprisonment, false arrest, and willful and malicious conduct on the part of Stop & Shop by detaining plaintiff until she signed the release. Those counts included a demand for punitive damages. Also, counts 5 and 6 of the amended complaint, which contained the extortion claims, realleged the other counts that included claims for punitive damages. When defendant raised this argument to the trial justice, it indicated that punitive damages "were properly pled." Given the liberality of notice pleading and the ability of a pleader to incorporate by reference allegations contained in previous averments, we agree with this conclusion. Furthermore, Stop & Shop not only failed to object to the court's instruction on punitive damages, but also its counsel specifically requested such an instruction without limiting its applicability to only certain counts.[4] Thus, its argument on this point must fail.

## Conclusion

For these reasons, we deny Stop & Shop's appeal and affirm the Superior Court's judgment.

---

4. The defendant stated the following: "[W]e have requested an instruction on punitive damages, and we're asking that it include the intent to cause harm to plaintiff."

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.