### David R. FENWICK

v.

### Claire OBERMAN.

No. 2002–719–Appeal.

Supreme Court of Rhode Island.

April 29, 2004.

Ronald J. Fishbein, East Providence, for Plaintiff.

William C. DiMitri, for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

### OPINION

PER CURIAM.

Barely touched, let alone battered and bruised, the plaintiff, David R. Fenwick

(plaintiff), appeals from a Superior Court judgment on a verdict awarding him $1 in damages for a battery suffered at the hands of his former supervisor, Claire Oberman (defendant). The plaintiff contends that the trial justice erred by excluding evidence of past animosity between him and the defendant and by failing to issue certain jury instructions discussing criminal battery and punitive damages. For the reasons indicated below, we affirm the judgment of the Superior Court.

This case came before the Supreme Court for oral argument on March 3, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time.

The Providence office of the United States Department of Housing and Urban Development (HUD) provided the forum for this confrontation. The plaintiff had been working at HUD under the supervision of defendant since December 1988. Presumably, June 3, 1994, was to be a day like no other. At some point during that day, defendant entered the room where plaintiff's desk was and asked to borrow a book with fax cover sheets. When plaintiff left his desk to assist her, he noticed that his books no longer were on the bookshelf where he usually kept them. What happened next is a source of contention.

The plaintiff testified that he asked about his books, and defendant told him that they were moved so that copy paper could be placed on the bookshelf. This prompted a heated argument between plaintiff and defendant. The plaintiff testified that at some point during this exchange, defendant grabbed him by the throat and began choking him. He said, that he grabbed her arm and eventually removed it from his throat. According to plaintiff, defendant then grabbed his face, with her palm on his chin, her fingers on one cheek and her thumb on the other, and started squeezing it. He said that he had to use a great deal of force to remove her hand at that point. He testified that she touched his face a third time, tapping the underside of his chin and saying, "Tsk, tsk, tsk, tsk."

The defendant relayed a very different version. She testified that when she entered the room, plaintiff "started throwing a temper tantrum" and yelling that she had no right to move his things. According to defendant, she responded that she had not moved the office materials and suggested that defendant ask a third party about his books. The defendant testified that plaintiff began throwing reams of paper on the floor, and that she kept picking them up. At that point, defendant testified, she attempted to calm plaintiff down by placing her finger under his chin, but that plaintiff grabbed her arm and twisted it away. She said that the contact lasted for "a split second" and that she did not touch him again after that.

The plaintiff's counsel attempted to cross-examine defendant about an alleged 1991 office incident that created the rift between plaintiff and defendant. The trial justice excluded testimony about the origins of the historical bad feelings between the parties for lack of relevance.

The jury also heard two other HUD employees' descriptions of the fight. Elaine Carpentier (Carpentier) testified that she was in the room when the incident occurred, but she did not recall any of the words that plaintiff or defendant uttered at the time. Carpentier testified that she saw defendant grab plaintiff somewhere between the jaw and the neck area, but that it did not appear that she was at-

tempting to choke or otherwise harm plaintiff. Carpentier also indicated that there was only one incident of contact and that defendant did not touch plaintiff again.

Another HUD employee, Gertrude Hall (Hall), testified[1] that, although she could not see the combatants' hands during the incident, it appeared that plaintiff grabbed defendant's arm and pushed it down. Hall said that plaintiff began yelling "sexual harassment" and his face went gray. Hall did not see any swelling on plaintiff's throat, but said that there was a reddish mark on one of his cheeks and that defendant had red marks on her wrist.

At the close of all evidence, plaintiff requested that the trial justice consider an award of punitive damages. The trial justice determined that there was nothing in the testimony "that would justify a hint of punitive damages," denied his request, and instructed the jury on assault and battery. So doing, the trial justice rejected several of the plaintiff's requested instructions dealing with criminal battery and punitive damages. The jury found that defendant did commit a battery, but that plaintiff was neither assaulted nor injured. Accordingly, the jury awarded plaintiff $1 in nominal damages.[2] The plaintiff timely appealed.

Before we wrestle with the issues raised in this appeal, we note that neither party contests the jury's finding that defendant committed a battery on, but did not assault, plaintiff. Therefore, any assignment of error on appeal is relevant only to the extent that it may have affected the jury's award of damages.

█ We begin by addressing plaintiff's challenge to the trial justice's refusal to issue an instruction on punitive damages.[3] A party "is entitled to a jury instruction in accordance with the law relevant to the issues raised by the parties and the evidence presented." *State v. Gore,* 820 A.2d 978, 979 (R.I.2003) (mem.). The evidence presented in this case reveals that punitive damages were inappropriate and, therefore, the trial justice did not err in refusing to charge the jury on that issue.

This Court consistently has looked askance at punitive damages except in egregious circumstances. Punitive damages are appropriate only in the rare circumstances when "a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." *Palmisano v. Toth,* 624 A.2d 314, 318 (R.I.1993) (citing *Davet v. Maccarone,* 973 F.2d 22, 27 (1st Cir.1992)). A party seeking punitive damages must produce " 'evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality' that should be punished." *Bo-*

---

1. Portions of Gertrude Hall's deposition testimony was read into evidence.

2. When first announcing the jury's verdict, the foreperson indicated that the jury concluded that nothing should go to plaintiff, but that the costs for court should be paid. The trial justice then instructed the jury that it was not permitted to award court costs, but that it could return a verdict for nominal damages in the amount of $1 if it found defendant liable, but found no competent evidence of damages. After briefly deliberating, the jury determined that plaintiff was entitled to nominal damages.

3. The plaintiff also faults the trial justice for refusing to issue requested jury instructions discussing the fact that battery is a crime, the criminal penalties for battery and the fact that it is no defense to a civil action "that no criminal complaint for the crime or offense has been made." G.L.1956 § 9–1–2. Because these instructions were requested only for the purpose of establishing that a battery had occurred, plaintiff was not prejudiced by the trial justice's refusal, and we need not address that issue now.

*urque v. Stop & Shop Companies, Inc.,* 814 A.2d 320, 326 (R.I.2003) (per curiam) (quoting *Mark v. Congregation Mishkon Tefiloh,* 745 A.2d 777, 779 (R.I.2000)).

Whether a party has met this rigorous standard is a question of law. *Palmisano,* 624 A.2d at 318. The trial justice makes the preliminary legal determination of whether there are adequate facts to support an award of punitive damages. *Id.* If the trial justice determines that the evidence justifies a punitive damages award, the trier of fact makes the ultimate determination of whether and to what extent such damages should be awarded. *Id.* (citing *D'Amato v. Rhode Island Hospital Trust National Bank,* 772 F.Supp. 1322, 1325 (D.R.I.1991) and *Borden v. Paul Revere Life Insurance Co.,* 935 F.2d 370, 382 (1st Cir.1991)).

The plaintiff argues that because defendant's conduct constituted criminal battery, *see* G.L.1956 § 11–5–3(a), punitive damages were justified. This Court has defined battery as "an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." *Proffitt v. Ricci,* 463 A.2d 514, 517 (R.I.1983). Aside from the obvious higher standard of proof required to establish criminal battery, the law recognizes no distinction between criminal and civil battery. *See State v. Messa,* 594 A.2d 882, 884 (R.I.1991) (quoting *Proffitt* to define criminal battery); David M. Zlotnick and Carly Beauvais Iafrate, *Touch This! Over–Criminalization of Offensive Conduct,* 50 R.I. Bar J. 5, 6–7 (2002) (suggesting that criminal battery should include an element of harm).[4]

The fact that a battery may also be criminal in nature does not automatically require an instruction on punitive damages. For example, in *Picard v. Barry Pontiac–Buick, Inc.,* 654 A.2d 690, 696 (R.I.1995), we held that punitive damages were inappropriate because, although a battery had occurred, there was no evidence of malice or bad faith on the part of the defendant. The plaintiff in *Picard* alleged that the defendant lunged at her while she attempted to photograph him. She testified that the defendant grabbed her around the shoulders, spun her around and then released her when someone said, "let her go." *Id.* at 692. The defendant denied touching the plaintiff, although he admitted that he attempted to touch her camera. *Id.* at 694. Against that factual backdrop, we held that punitive damages were inappropriate because there was no evidence of malice or bad faith on the part of the defendant. *Id.* at 696. On the other hand, we held in *Sherman v. McDermott,* 114 R.I. 107, 109, 329 A.2d 195, 197 (1974), that punitive damages were appropriate when the defendant-police officer arrested the plaintiff and beat him with a club on the head and legs while two other police officers held the plaintiff down. These facts, the Court concluded, were sufficiently malicious, wanton and willful to support an award of punitive damages. *Id.*

The battery that defendant committed against plaintiff did not rise to the level of malice requiring a punitive damages award. Here, the trial justice found only that "defendant placed her hand over plaintiff's mouth during an office dispute." The melee between plaintiff and defendant was more akin to the exchange in *Picard* than the brutal, mob-like beating in *Sher-*

---

4. Because this case does not involve a conviction for criminal battery, we need not address Professor Zlotnick's and Ms. Iafrate's well- reasoned argument at this time. However, we may consider this issue given the proper factual scenario.

*man.* Thus, the trial justice made the correct preliminary legal determination that the facts did not justify an award of punitive damages.

▆ The plaintiff contends that if the trial justice allowed him to cross-examine the defendant about the preexisting animosity between him and the defendant, then he could have shown that "the particular incident of June 3, 1994 [amounted] to something substantially more than * * * *de minimus* conduct * * *." It is well settled that a trial justice's determination of relevance will not be disturbed on appeal absent a prejudicial abuse of discretion. *State v. Greene,* 823 A.2d 1129, 1133 (R.I.2003). A chilly relationship between the parties in this case would not raise the violence of the events of June 3, 1994 to a level justifying punitive damages. Nor could such a relationship increase the amount of damages necessary to compensate the plaintiff for his "injuries." Therefore, the plaintiff cannot demonstrate that the trial justice's ruling was either prejudicial or an abuse of discretion.

### Conclusion

For the foregoing reasons, we conclude that the battery committed in this case was not sufficiently willful, reckless or wicked to justify a punitive damage award, *Bourque,* 814 A.2d at 326, and the trial justice properly refused to charge the jury on that issue.[5] The judgment of the Superior Court awarding the plaintiff $1 in compensatory damages is affirmed. The papers in the case shall be remanded to the Superior Court.

---

5. This is a case that should have been resolved through mediation.