**STATE**

v.

**Joanne ALBANESE.**

**No. 2007–327–C.A.**

Supreme Court of Rhode Island.

May 29, 2009.

Aaron L. Weisman, Department of Attorney General, for Plaintiff.

Marie T. Roebuck, Office of the Public Defender, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The defendant, Joanne Albanese, appeals to this Court from a judgment of conviction after a Superior Court trial justice, sitting without a jury, found her guilty of battery in violation of G.L.1956 § 11–5–3. The defendant was sentenced to one year of probation, was ordered not to have any contact with the victim, and was required to attend anger-management

counseling. This case came before the Supreme Court for oral argument on March 4, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the parties' arguments and considering the memoranda submitted by counsel, we are satisfied that cause has not been shown. Accordingly, we will decide the appeal at this time. For the reasons set forth in this opinion, we affirm the judgment of conviction of the Superior Court.

## I

### Facts and Travel

On November 22, 2003, the Narragansett Police Department filed a criminal complaint against defendant, charging her with one count of simple assault and/or battery in violation of § 11–5–3,[1] and one count of resisting arrest in violation of G.L.1956 § 12–7–10. Following a trial in the Fourth Division District Court, a District Court judge found defendant guilty of the assault-and-battery charge, but not guilty of the resisting-arrest charge. The judge sentenced her to one year of probation and he also ordered her not to have any contact with the state's witnesses. The defendant appealed her conviction to the Washington County Superior Court for a trial *de novo*. She later waived her right to a jury trial and proceeded before a trial justice.

At trial, the state first presented Thomas Arrico, a maintenance worker employed by a property management company that maintained a number of apartment complexes, including the Driftwood Apartment Complex in Narragansett, where Albanese was a tenant. Arrico testified that he and defendant had enjoyed an affable relationship during the first few years that he worked at the apartment complex. However, after a number of incidents between the two, some of which culminated in complaints being filed by each against the other, the relationship had undoubtedly soured.

On the morning of November 11, 2003, Arrico and Donald Tetlow, another maintenance worker, were replacing kitchen cupboards in one of Driftwood's apartments. Arrico said that as he carried old cupboards to the complex's dumpster, he observed defendant's car in the parking lot. He testified that soon thereafter, he noticed Albanese standing on the other side of the dumpster. After throwing away the cupboards, he said he walked back toward the unit where he had been working and that suddenly Albanese ran around a mailbox and stood in front of him. He said that she briefly stared at him before she charged toward him and administered a "full body slam"[2] Arrico said that after defendant slammed into his chest, he momentarily lost his balance, but righted himself and did not fall to the ground.

**1.** General Laws 1956 § 11–5–3(a), entitled "Simple assault or battery," provides, in pertinent part: "Except as otherwise provided in § 11–5–2 [felony assault], every person who shall make an assault or battery or both shall be imprisoned not exceeding one year or fined not exceeding one thousand dollars ($1,000), or both."

**2.** While the term "body slam" may cause one to envision a professional wrestler, such as the now deceased wrestling legend, "Andre the Giant," lifting an opponent high in the air, before dropping him to the ground, this is not what Arrico described on that November morning. *See* Random House Unabridged Dictionary 233 (2d ed.1993) (defining, a "body slam" as "a wrestling throw in which an opponent is lifted and hurled to the mat, landing on his or her back"). Arrico testified that when she administered the "body slam," Albanese raised her right arm, brought her fist up to her left shoulder, lowered her shoulder toward the ground, and charged into him.

Tetlow testified that he was walking toward the dumpster when he saw Arrico stumbling backwards and trying to recover his balance, even though he did not see the contact between defendant and Arrico. Tetlow said that he saw defendant standing near Arrico, and that she was yelling, to nobody in particular, "[d]id you see what * * * [he] did to me?" Tetlow testified that he put down the cupboards that he was carrying and approached Arrico to see what was wrong with him. Tetlow said he was concerned for Arrico because "it looked like he was hurting." The only other eyewitness to the altercation was Ruth Hay, another Driftwood tenant, whose recorded District Court testimony was admitted into evidence by agreement of the parties in lieu of her appearance before the Superior Court. Hay said that while she was sitting outside on the stairs of another apartment about 200 feet away, she saw Albanese run and slam her shoulder into Arrico.

Arrico called the police shortly after the incident. Narragansett police officer Matthew Sutton responded, and he located Albanese on a nearby side street. He said that defendant approached him as he exited his patrol car and asked: "Did he call the cops on me? All we did was bump into each other. It was nothing." Officer Sutton, along with his supervisor, Sgt. Gerald Favreau, who had just arrived at the scene, followed Albanese back to Driftwood to investigate the incident. Once there, and despite a request by the police that Albanese remain in her vehicle, she left her car and started yelling that Arrico was lying and that "they're all trying to get me." Officer Sutton testified that after he spoke with Albanese, and after Sgt. Favreau spoke with Arrico and Hay, defendant was arrested. The state rested after presenting Sutton as a witness.

Defense counsel then moved to dismiss the state's charge against Albanese pursuant to Rule 29(b) of the Superior Court Rules of Criminal Procedure. Defense counsel identified a number of inconsistencies between Arrico's testimony before the trial justice and his prior recorded testimony in the District Court, including his testimony about his lack of knowledge about a mold problem at Driftwood. The following, somewhat confusing colloquy, took place during Arrico's cross-examination in the Superior Court:

"Q: So is it your testimony here under oath that you never became aware of a mold problem at the Driftwood Apartments in the entire time that you were the maintenance person there?

"A: Mold in somebody's bathroom? I mean—

"Q: No. Mold in the building itself, behind the walls, down underneath in the cellar area?

"A: No."

Defense counsel contended that Arrico's testimony was so lacking in credibility that the trial justice should grant the motion to dismiss. But, after he considered the argument and reviewed the testimony of the state's witnesses, the trial justice said that he accepted their testimony as being credible, and he denied the motion.

It is fair to say that defendant, during the presentation of her case, focused on the issue of mold at the complex. Melinda Fratiello, a former tenant at Driftwood, testified that she was forced to live in a hotel for a period because of the mold in her apartment. She said that when she returned to her apartment in November 2003, she had a conversation with Arrico and a few other people who worked for the management company about the situation, and that they allowed her to enter her apartment to remove her belongings.

Doctor Robert Vanderslice, Chief of the Office of Environmental Health Risk Assessment for the Rhode Island Depart-

ment of Health, testified that he became involved with Driftwood after Albanese complained to his office about mold in the apartment complex. He said that in late 2001 or early 2002, he visited Driftwood to determine whether mold was still a problem at the complex after remediation for mold contamination was completed in one of the buildings. According to the witness, Arrico took him to a crawl space in one of the buildings where remediation had taken place. Doctor Vanderslice testified that he did not see a problem with mold in that location.

The defendant did not testify during the trial in the Superior Court. Instead, her District Court testimony was admitted into evidence. Her version of what transpired on November 11, 2003, was in stark contrast to the testimony of the state's witnesses. The defendant said that she called the police earlier that morning because she believed Arrico was harassing her.[3] Shortly after calling the police, Albanese said that she left her apartment to drive to a friend's home, but that she first stopped to throw something into the dumpster. There, Albanese said, she observed Arrico standing near her car, watching her. She said that in an effort to avoid him, she walked around the back of the dumpster toward her mailbox. Albanese testified that she realized her keys were in her car, so she turned back to return to her car, at which point she collided with Arrico. The defendant testified that she did not intentionally bump into Arrico, and that after the contact, they argued about whose fault it was before she told him to stay away from her or she would call the police.

At the close of all the evidence, Albanese renewed her motion to dismiss, incorporating it in a "Closing Memorandum." The defendant again argued that Arrico was not credible, that he fabricated this offense because of his animosity toward Albanese, that he bumped into her, and that he did not suffer any bodily harm as a result of the contact. Therefore, defendant argued that the court should conclude that the contact was "at the worst, offensive, non-criminal conduct (regardless of who bumped into whom)," and that Albanese should be found not guilty. The trial justice again denied the motion to dismiss.

In his decision on the case on its merits, the trial justice found that that there was no evidence to convict defendant of assault because Arrico did not testify that he had been placed in fear of bodily harm. The trial justice next turned to the crime of battery. Although he acknowledged that Arrico was not injured, the trial justice noted that proof of harm or injury is not a required element to sustain a charge of battery in Rhode Island. He concluded that the credible evidence convinced him beyond a reasonable doubt that defendant committed a battery in violation of § 11-5-3.

The defendant moved for a new trial, arguing that she should not be convicted of battery because the contact did not produce a harmful result and rather was *de minimis*, which she argued should not be adjudged to be criminal. The defendant also argued that the verdict was against the preponderance of the evidence because the trial justice erred in his credibility determinations during the trial. The trial justice reviewed all the evidence and again found that the state's witnesses were credible. He characterized Albanese's actions as "deliberate," "willful," and "intentional." He ruled that the state was not required to prove an injury or harmful result as an

---

**3.** It is not clear from defendant's testimony why she believed Arrico was harassing her on that morning. However, she testified that she notified the dispatch operator that she had called earlier in the week because Arrico was slamming her back door so violently that objects were falling from her walls.

element of battery and that the evidence had established that defendant deliberately thrust her body into Arrico's body. Therefore, the trial justice denied the motion for a new trial. The defendant timely appealed to this Court.

## II

### Analysis

The defendant raises three issues on appeal. She argues: (1) that the trial justice erred when he denied the motion to dismiss; (2) that this Court should abandon its common-law definition of criminal battery and adopt that of the Model Penal Code, which requires proof of harm; and (3) that the trial justice erred: (a) when he restricted defendant's cross-examination of Arrico on issues that would have demonstrated his bias and motive to lie, and (b) when he refused to allow testimony about a temporary restraining order and judgment entered in the District Court against the property management company.

### Motion to Dismiss

■ We first address defendant's assertion that the trial justice erred when he denied her motion to dismiss. In a jury-waived criminal proceeding, a defendant may move to dismiss under Rule 29(b) to challenge the legal sufficiency of the evidence. *State v. Harris*, 871 A.2d 341, 346 (R.I.2005). When ruling on such a motion, the trial justice acts as the factfinder. *State v. McKone*, 673 A.2d 1068, 1072 (R.I. 1996). That role requires the trial justice to:

> "weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party. After so doing, if the trial justice * * * concludes that the trial

evidence is sufficient to establish guilt beyond a reasonable doubt, he or she denies the defendant's motion to dismiss and, if both sides have rested, enters decision and judgment of conviction thereon. If the evidence is not so sufficient, he or she grants the motion and dismisses the case." *State v. Forand*, 958 A.2d 134, 141 (R.I.2008) (quoting *McKone*, 673 A.2d at 1072–73).

On appeal, this Court applies a deferential standard of review to a trial justice's ruling. *State v. Silvia*, 798 A.2d 419, 424 (R.I.2002). We will not reverse the findings of a trial justice "unless it can be shown that he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *State v. Traficante*, 636 A.2d 692, 694 (R.I.1994). "We are required to review the record carefully to see if it in fact contains sufficient evidence to support the trial justice's conclusion." *Harris*, 871 A.2d at 346.

■ We have conducted such a review and we conclude that the record contains sufficient evidence to support the trial justice's finding that defendant committed a battery upon Arrico. The trial justice correctly applied the standard for ruling on a Rule 29(b) motion when he considered defendant's motion to dismiss when the state rested and again when it was renewed at the close of all evidence. At the close of the state's case, he weighed and evaluated the evidence, passed upon the credibility of the trial witnesses, and impartially engaged in the inferential process. After doing so, he accepted the testimony of all the state's witnesses and he found them to be credible. After the motion was renewed at the close of all evidence, the trial justice reviewed the testimony from each of the witnesses and said that the credible evidence convinced him beyond a reasonable doubt that Albanese committed a battery.[4] Our review of the record leads us

---

4. Moments later, as he rendered his decision    on the merits of the case, the trial justice said

to conclude that the trial justice had an adequate basis for so finding. Arrico testified that defendant charged toward him and slammed into his chest. Hay's testimony supported Arrico's version of the incident. Furthermore, Tetlow said that he saw Arrico just after the contact and that he was staggering and trying to recover his balance. The defendant acknowledged that there had been contact between the two, but she played down both its significance and her role in the incident. We agree with the trial justice that sufficient evidence was presented to establish defendant's guilt beyond a reasonable doubt, and therefore hold that he did not err when he denied defendant's motions to dismiss.

### Battery in Rhode Island

■■■ The defendant next invites this Court to abandon our common-law definition of criminal battery and replace it with the Model Penal Code's rule,[5] which requires bodily injury to support a criminal conviction for battery.[6] In Rhode Island, "[a]side from the obvious higher standard of proof required to establish criminal battery, the law recognizes no distinction between criminal and civil battery." *Fenwick v. Oberman*, 847 A.2d 852, 855 (R.I. 2004). "Battery refers to an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." *State v. Messa*, 594 A.2d 882, 884 (R.I.1991) (quoting *Prof-*

*fitt v. Ricci*, 463 A.2d 514, 517 (R.I.1983)). In *Fenwick*, we indicated that the opportunity may one day present itself, given the proper factual scenario, for this Court to address whether criminal battery should require an element of harm. *Fenwick*, 847 A.2d at 855 n. 4. However, we do not believe that this issue is properly before us in this case because the argument was not raised during trial.

Rule 33 of the Superior Court Rules of Criminal Procedure does not authorize a trial justice following a jury-waived criminal trial to grant a new trial. Rule 33 permits only that a trial justice on motion by the defendant "may vacate the judgment, take additional testimony, and direct the entry of a new judgment." The rule now permits alleged errors of law to be addressed in the context of a motion for a new trial. However, it does not allow a defendant to raise an entirely new issue at the Rule 33 stage. *See* Rule 33, Committee Notes for 2002 Amendment ("It is not intended nor anticipated that the ability to raise an error of law on a motion for a new trial will change the * * * harmless error, plain error, and contemporaneous objection rules generally applicable to trials."). The rule allows defense counsel to present to the trial justice a legal argument that previously had been made during trial before the verdict was entered.

We recognize that defendant repeatedly argued during trial that Arrico never was harmed by the contact with Albanese, but defense counsel never argued that such

---

that he did not find defendant's District Court testimony to be credible. Instead, he said that he believed the testimony of Hay, who despite acknowledging a partially impeded view, nonetheless said that she observed the contact between Arrico and Albanese, continuously describing it as a "body slam."

**5.** Under the Model Penal Code, a person is guilty of battery if he "purposely, knowingly or recklessly causes bodily injury to another."

Model Penal Code § 211.1(1)(a) (Official Draft 1962). Although section 211.1 is entitled "Assault," it incorporates the crime of battery. *See id.*, cmt. 2 at 183–84.

**6.** This argument is supported by a bar journal article written by David M. Zlotnick and Carly Beauvais Iafrate, entitled *Touch This! Over–Criminalization of Offensive Conduct*, 50 R.I. Bar J. 5, 6–7 (2002) (suggesting that criminal battery should include an element of harm).

harm was a required element of battery, and instead agreed with the trial justice's definition of battery that did not require proof of injury. During the first motion to dismiss, the trial justice said "we all know that battery is an unlawful touching of one person's body with another person's body. Do you accept that?" Defense counsel responded, "An unpermitted, un—yes, I do, your Honor." Although defendant contended that Arrico was not harmed by the contact, this argument—that criminal battery should require an element of harm as opposed to a mere uncontested touching or offensive contact—was not made to the trial justice until the hearing on defendant's motion for a new trial. Because such an argument was not made during trial, it cannot belatedly be asserted during the motion for a new trial. As we have said on innumerable occasions, this Court's familiar " 'raise-or-waive' rule precludes our consideration of an issue that has not been raised and articulated at trial." *State v. Bido*, 941 A.2d 822, 828 (R.I.2008). Therefore, because the issue was not properly preserved, we decline to address it at this time.

## Sixth Amendment Issues

Lastly, defendant argues (1) that the trial justice impermissibly restricted her cross-examination of Arrico on issues that would have demonstrated his bias and motive to lie, and (2) that the trial justice erred by refusing to allow testimony concerning a temporary restraining order and judgment entered in the District Court against the property management company. The defendant contends that this was relevant and that its exclusion prevented her from presenting her defense.

■■■ This Court engages in a *de novo* review of a defendant's claim that her constitutional rights of confrontation and cross-examination, as well as the right to present a defense, were violated. *State v. Lopez*, 943 A.2d 1035, 1041 (R.I.2008).

"Both the Sixth Amendment to the United States Constitution (through the Fourteenth Amendment) and article 1, section 10, of the Rhode Island Constitution guarantee individuals accused of criminal charges the right to confront and cross-examine any adverse witnesses who testify against them." *State v. Dorsey*, 783 A.2d 947, 950 (R.I.2001). The right to confrontation may be the "principal means" to test the credibility of a witness, but it is "far from absolute." *Lopez*, 943 A.2d at 1042 (quoting *State v. Parillo*, 480 A.2d 1349, 1357 (R.I.1984) and *State v. Briggs*, 886 A.2d 735, 745 (R.I.2005)). "Once trial counsel has been permitted to engage in a sufficient degree of cross-examination to satisfy the requirements of the Sixth Amendment, * * * trial justices retain a considerable degree of discretion to impose reasonable limitations on cross-examination." *Lopez*, 943 A.2d at 1042. "Moreover, after allowing sufficient cross-examination to satisfy this constitutional threshold, the trial justice's decision to limit further cross-examination is reversible only upon a clear abuse of discretion." *Dorsey*, 783 A.2d at 951 (citing *State v. Anthony*, 422 A.2d 921, 924 (R.I.1980)). Even then, however, "the denial of the right to confrontation is subject to harmless-error analysis." *State v. Pettiway*, 657 A.2d 161, 164 (R.I.1995). "The inquiry is 'whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.' " *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

The defendant argues that Arrico testified during cross-examination that he was not aware of a mold problem in the Driftwood complex. Defense counsel pressed on this issue and attempted to interrogate Arrico about photographs of Fratiello's

apartment that portrayed warning notices of mold remediation. The trial justice asked how they were relevant to the altercation that occurred between Arrico and Albanese. Defense counsel said that he wished to question Arrico about these photographs because of his prior testimony that he was unaware of mold in the complex and because it was relevant to the continuing animosity between Arrico and Albanese emanating from the mold problem. The trial justice prohibited the line of questioning, ruling that it was irrelevant and unduly repetitive.

■ In her brief to this Court, defendant argues that the trial justice erred by limiting Arrico's cross-examination about the photographs because the expected testimony was relevant to the witness's bias and motive to lie. In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court held that the Confrontation Clause requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias. *Id.* at 316–18, 94 S.Ct. 1105. The Court has said that:

> "Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."

*United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Relying on *Davis*, this Court, in *State v. Tiernan*, 941 A.2d 129, 137 (R.I.2008), held that a trial justice does not have the authority to completely (or virtually so) prohibit defense counsel from attempting to elicit testimony regarding bias on the part of a witness. There, we held that the trial court erred because the trial justice excessively limited the cross-examination of a state's witness who had, or may have had, "an incentive to testify in a particular way." *Id.* at 131. The record in this case, however, indicates that defense counsel focused primarily on the mold issue in an attempt to impeach Arrico's *general credibility* in light of his previous testimony.[7] In a brief concurring opinion in *Davis*, Justice Stewart opined: "I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." *Davis*, 415 U.S. at 321, 94 S.Ct. 1105. We see a distinction between an attack on a witness's general credibility and a more specific attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 316, 94 S.Ct. 1105; *see State v. Merida*, 960 A.2d 228, 234–36 (R.I.2008). With these principles in mind, we do not agree that defendant's confrontation rights were violated in this case. Whether Arrico was aware of mold in the apartment complex was a collateral matter that was not aimed at eliciting a specific bias, interest, or motive.[8] Instead, this was an attempt to impeach his general

---

7. When the trial justice questioned defense counsel about how the photographs were relevant to the altercation between Arrico and defendant, he responded that they were relevant to show that Arrico was not a credible witness in light of his earlier testimony about being unaware of mold, and that these photographs would "bring[ ] into question his credibility."

8. Even if the proposed questioning had been directed toward an issue that demonstrated a

credibility by demonstrating that he was being untruthful about his lack of knowledge about mold in the complex.[9] Therefore, because the excluded questioning involved a collateral matter concerning the witness's general credibility, it was within the trial justice's discretion to limit it, and we hold that he did not err when he did so.[10]

### Temporary Restraining Order

■ Finally, the defendant argues that she was precluded from presenting a line of defense when she was not allowed to introduce testimony concerning a temporary restraining order and judgment from the District Court that ordered the property management company, its agents, and its employees not to harass or interfere with the defendant. This claim of error has no merit. "It is well settled that this Court will not disturb a trial justice's ruling on an evidentiary issue unless that ruling 'constitutes an abuse of the justice's discretion that prejudices the complaining party.'" *State v. Hallenbeck,*

potential bias or motive, it would have been cumulative and the trial justice would have been within his discretion to limit it. The trial justice had listened to extensive testimony about the animosity that existed between these two individuals. Defense counsel cross-examined Arrico at length about his strained relationship with defendant including the complaints that each had filed against the other.

9. We also note that defense counsel's assertion that Arrico testified falsely as to his knowledge of a mold problem in the complex is inconsistent with the witness's testimony during cross-examination. Arrico said that Clean Air of America had performed mold remediation in Fratiello's apartment. He contended however, that "[i]f you ask—they weren't finding any mold." Arrico's testimony certainly acknowledges that he was aware of the mold issue at Driftwood, and that remediation had taken place inside Fratiello's apartment; however, he contended that mold was not present in the apartment.

10. The defendant also contends that the trial justice erred when he curtailed defense counsel's questioning of Fratiello about the mold-remediation process. Defense counsel asked her whether she had an understanding about why she had to leave her apartment. The trial justice sustained the state's objection, at which point defense counsel made an offer of proof:

"If this witness were allowed to testify in answering my question, she would tell this Court that when she went in with Mr. Arrico to her apartment she observed mold, toxic mold, on her walls. She was told that the reason that she was being removed from her apartment was because of the toxic mold on her wall. The reason that she was required to take—move to a hotel or a motel for three weeks and then for another two weeks, as she's already testified to, is because the remediation that was going on because of the toxic mold on her wall in her apartment, and this all goes to credibility of Mr. Arrico who testified he didn't know there was any mold in any of the apartments at the Driftwood."

The trial justice ruled that the proffered testimony was objectionable because it contained hearsay and expert opinion. However, we note that this was an improper attempt to impeach Arrico's credibility on a collateral matter through the introduction of extrinsic evidence. This Court has held that "[a] witness may not be impeached on collateral matters by the introduction of extrinsic evidence. The cross-examiner is restricted to the answers of the witness." *State v. Brown,* 574 A.2d 745, 749 (R.I.1990) (quoting *State v. Bowden,* 439 A.2d 263, 268 (R.I.1982)); *see also State v. Filuminia,* 668 A.2d 336, 338 (R.I.1995) (extrinsic evidence deemed not collateral because issues raised there "directly bore on [the] defendant's guilt or innocence"); *Bowden,* 439 A.2d at 267–68 (impeachment of a witness's credibility by extrinsic evidence deemed improper because the disputed matter did not tend to establish a material proposition in the case, nor did it have any "meaningful bearing" on the defendant's guilt or innocence); 3A Wigmore, *Evidence* § 1003 at 961 (Chadbourn rev.1970) (the only bright-line test of collateralness is whether the fact could have been shown in evidence *"for any purpose independently of the contradiction "*).

878 A.2d 992, 1015 (R.I.2005) (quoting *State v. Gomez,* 848 A.2d 221, 232 (R.I. 2004)). We believe this testimony would have involved the "needless presentation of cumulative evidence." R.I. R. Evid. 403; *see also State v. Lynch,* 854 A.2d 1022, 1032 (R.I.2004) (defining cumulative evidence as evidence "tending to prove the same point to which other evidence has been offered") (quoting *State v. Coleman,* 239 Neb. 800, 478 N.W.2d 349, 358 (1992)). The defendant was able to present a defense that extensively examined the contentious relationship between Arrico and her. Furthermore, defense counsel cross-examined Arrico at length about the altercation between the two. The admission of this evidence would have been cumulative, of minimal probative value, and served to demonstrate a point that already had been firmly established. *See* Rule 403. Accordingly, we are satisfied that the trial justice's evidentiary ruling on this issue was not an abuse of discretion nor did it prejudice the defendant.

## III

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of conviction, and the record in this case shall be returned to the Superior Court.

Chief Justice WILLIAMS (ret.) did not participate.