**Louis P. DeMASCOLE et al.**

v.

**Donald C. TATRO.**

**No. 94–392–Appeal.**

Supreme Court of Rhode Island.

March 29, 1996.

**58**

Christopher D. Healey, John D. Lynch, Warwick, for Plaintiffs.

Matthew Oliveiro, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeal of Louis P. DeMascole, the plaintiff, from a judgment entered in the Superior Court in favor of the defendant, Donald C. Tatro. The judgment was entered pursuant to an order of dismissal made by a justice of the Superior Court in accordance with Rule 41(b)(2) of the Superior Court Rules of Civil Procedure. We affirm the judgment. The facts of the case insofar as pertinent to this appeal are as follows.

The plaintiff and defendant had at one time engaged in a business enterprise known as K.M.T., Inc. (K.M.T.), and a sister company known as Creative Sales, Inc. (Creative). Both companies were engaged in the manufacture, sale, and distribution of costume jewelry. The plaintiff had been a highly paid employee of these companies. Both companies were initially operated by defendant from the basement of his home in the early 1970s. Until 1985, defendant was the sole stockholder of the two corporations.

The plaintiff had made overtures to defendant, seeking to purchase 50 percent of the stock of each corporation. After some negotiation, defendant in 1985 made a gift to plaintiff of 20 percent of the stock of each corporation. At the same time he made a gift to his son, Timothy, of 15 percent of the stock of each corporation. Thus, at the time of this controversy defendant was the owner of 65 percent of the shares of each corporation. Subsequent to 1985 the relationship between plaintiff and defendant deteriorated in terms of mutual trust and confidence. In 1987 plaintiff resigned from his executive positions with both companies. Some months after leaving K.M.T. and Creative, plaintiff opened a competing business in Warwick that engaged in the importation, the design, and the distribution of costume jewelry. This company was given the name Creative Imports, Inc.

In 1987 defendant was approached by Mort Schwartz (Schwartz), who sought to be employed as a replacement for plaintiff. The defendant suggested that he did not wish to replace plaintiff but was interested in selling the companies. A series of negotiations and communications ensued among defendant, Schwartz, and various representatives of each.

The evidence tended to show that defendant made an offer to sell the stock and assets of the companies to Schwartz for a total sum of $1 million. The offer also included a consulting contract and a noncompetition agreement to be executed with defendant personally for the sum of $2 million. The offer was never accepted by Schwartz. It is undisputed that at some point prior to this litigation the two companies went into receivership and the stock thereafter became worthless.

There was also evidence that prior to the negotiations between defendant and Schwartz plaintiff made an offer to purchase the stock of the two corporations for a sum of $3 million. Financing allegedly could not be obtained because of the refusal of defendant to subordinate certain loans due to him by K.M.T. and Creative in the amount of $900,000.

On the basis of these facts, plaintiff claimed that he was entitled to obtain on his own behalf and on behalf of the other stockholder the value of his stock, which he claimed to be $300,000, because of a violation by defendant of G.L.1956 § 7–1.1–72, which

provides in substance that when a sale or other disposition of all the property and assets of a corporation is contemplated, the board of directors must adopt a resolution recommending such sale or other disposition and submit said resolution to the stockholders. In the event that the stockholders wish to dissent, pursuant to §§ 7–1.1–73 and 7–1.1–74 such dissenting stockholders may demand the fair-market value of their shares. The plaintiff claimed that he was entitled at least to the fair-market value of his shares on the basis of these statutory provisions.

■ After hearing plaintiff's evidence, the trial justice pursuant to a motion made by defendant analyzed the evidence as required by Rule 41(b)(2) of the Superior Court Rules of Civil Procedure and made the following comments:

"Now, the Court listening to the testimony of Mr. DeMascole and Mr. Tatro finds both to be credible in their rendition of the facts. The plaintiff, as the moving party in this case, has the burden of proving that which he asserts or claims and that is that there has been a breach of fiduciary duty of Mr. Tatro to Mr. DeMascole as a minority shareholder and also that there has been a loss of corporate opportunity occasioned by the actions of Mr. Tatro to the detriment of Mr. DeMascole.

"Now, the plaintiff has to prove these allegations by a fair preponderance of the evidence, and based on the evidence that the Court has reviewed and the exhibits that have been marked and submitted as a full exhibit, this Court does not feel that the plaintiff has sustained that burden.

"The statutes that have been cited and the case law that has been presented to the Court does not clearly indicate to this Court any duty on behalf of Mr. Tatro as the majority stockholder to inform the minority shareholders of current negotiations. The statute in Rhode Island is clear that once a deal has been struck, it has to be approved by the minority shareholders. And there is also another minority shareholder in this matter, Mr. Tatro's son, who is not a party to this lawsuit.

"At no time, according to the testimony of any of the parties, has there been, ac-

cording to Mr. Tatro as the majority stockholder and the managing partner or the managing person because of Mr. DeMascole's voluntary resignation from the firm, any offer which could have been viably presented to the shareholders for their consideration which would have been required under 7–1.1–72.

"Now, had that occurred and the offer not been presented to the shareholder as required by statute, then perhaps the plaintiff's cause of action would properly lie.

"That didn't happen. There is no evidence before the Court whatsoever regarding any loss of corporate opportunity. There have been references both from Mr. Tatro called as an adverse witness and Mr. DeMascole that certain negotiations took place with the elusive Mort Schwartz, who unfortunately is unable to be presented by the plaintiff in the Court, but the Court is of the opinion that nothing that he may say, but assuming that he would agree that some negotiations took place, it is quite clear from the record that regardless of whatever bent those negotiations took there was no agreement, and absent an agreement there isn't a breach, of duty and absent a breach of duty there isn't any damage.

"So the Court believes and finds as fact and as conclusion of law that Mr. Tatro had no duty to disclose preliminary negotiations to any minority shareholder. The Court finds as fact that no deal had ever been concluded in such a posture as to have been able to have been presented to the board for ratification or discussion as required by statute.

"And, therefore, the Court concludes as a matter of law that Statute 7–1.1–71 [7–1.1–72] has not been violated. Also, there is no evidence in this case as to any damage accruing to the plaintiff as a result of this action. While it is true and stipulated that the stock is currently worthless, there is no evidence on the record that was due to any mismanagement by Mr. Tatro, any loss of business opportunity or any other cause of action that would accrue liability to Mr. Tatro. Because of this lack of

evidence on the record, the Court does not know why this stock is currently worthless or why this corporation went out of business, but there has been no allegation nor any proof to indicate that it was as a result of any of the actions on the part of Mr. Tatro."

Our examination of the record and the evidence in this case discloses that the trial justice, in making his findings of fact and conclusions of law, relied upon evidence that was virtually undisputed in respect to the material issues in the case. In responding to a motion to dismiss pursuant to Rule 41(b)(2), the trial justice is not required to view the evidence in the case in the light most favorable to the plaintiff and to draw all reasonable favorable inferences on behalf of the plaintiff but may weigh the evidence, determine the credibility of witnesses, and draw inferences. *Town of Charlestown v. Beattie,* 422 A.2d 1250 (R.I.1980); *Emerson Radio of New England, Inc. v. DeMambro,* 112 R.I. 300, 308 A.2d 834 (1973); *Levy v. Industrial National Bank of Rhode Island,* 106 R.I. 437, 260 A.2d 919 (1970). Indeed the trial justice reviews the evidence in the same manner as he or she would in a nonjury case after both parties had fully presented their evidence. *Charlestown v. Beattie,* 422 A.2d at 1251.

In reviewing the findings of the trial justice made pursuant to Rule 41(b)(2), this court applies the same deference that it would apply to findings of fact made by a trial justice in a nonjury case. We shall not disturb the trial justice's findings of fact unless he misconceived or overlooked material evidence or was otherwise clearly wrong. *Estate of Meller v. Adolf Meller Co.,* 554 A.2d 648, 651 (R.I.1989); *Samuel Nardone & Co. v. Bianchi,* 524 A.2d 1114, 1116 (R.I.1987). We must then determine whether the trial justice has made supportable findings of fact and whether he or she has applied the correct rule of law. *Abbey Medical/Abbey Rents, Inc. v. Mignacca,* 471 A.2d 189, 192–93 (R.I.1984). In the case at bar we are of the opinion that the trial justice did not overlook or misconceive any material evidence, nor was he otherwise clearly wrong. His findings were supported by overwhelming evidence. To these findings the trial

justice most certainly applied the correct rule of law. He analyzed the statutes with precision and determined that the negotiations between Tatro and Schwartz had not reached the point at which a proposed agreement had been formulated. There was thus no requirement on his part to submit a nonexistent agreement to the shareholders for their approval. As the trial justice found, he did not divert a corporate opportunity to himself. His efforts at negotiation were unsuccessful. He certainly owed no fiduciary duty to plaintiff to notify him of inconclusive discussions. He also had no duty to plaintiff to bring about successful negotiations for sale of stock and assets of K.M.T. and Creative. Tatro was certainly not a guarantor that Schwartz would agree with any proposal that he might make.

As the trial justice found, there was no diversion of a corporate opportunity since no corporate opportunity ever materialized. Obviously since no agreement for sale of the stock and or assets of the corporations was ever consummated, the statutory provisions for evaluation of stock as provided in § 7–1.1–74 were never triggered.

The plaintiff also contends that the trial justice abused his discretion in denying plaintiff's motion for a continuance in order to present Schwartz as a witness. The history of his ruling is illuminating.

This case initially came before the Superior Court for trial in October of 1993. At that time plaintiff requested and was granted a continuance in order to give him an opportunity to secure the presence of Schwartz as a witness. A date certain was established for trial in order to give the parties the maximum opportunity to provide for the presence of all necessary witnesses. Trial began on January 24, 1994. During the course of the trial, counsel for plaintiff stated that Schwartz would not be available until the week of January 31, 1994. The trial justice continued the case until January 31, 1994, but on that date Schwartz was still not available. At that point the case had been pending approximately eight and one-half years. When the trial justice was informed that Schwartz was still outside the country,

he concluded that he had tried to give plaintiff an opportunity to put on his case in full, but taking into account the age of the case, the fact that a date certain was given in October 1993, and the fact that an additional recess was allowed until January 31, 1994, he was not inclined to exercise his discretion for a further continuance.

There is no indication that the plaintiff made any effort to depose Schwartz between October of 1993 and January of 1994. In the circumstances leading up to this request for continuance and the prior forbearance of the trial justice, we believe that the denial of a further continuance did not constitute an abuse of discretion.

For the reasons stated, the plaintiff's appeal is denied and dismissed. The judgment entered in the Superior Court in favor of the defendant following dismissal under Rule 41(b)(2) is affirmed. The papers in the case may be remanded to the Superior Court.