Kevin O'BRIEN et al.

v.

Bruce LAROCHE, d.b.a. Bruce Construction et al.

No. 97–134–Appeal.

Supreme Court of Rhode Island.

May 4, 1998.

Stephen Edward Breggia, Providence, for Plaintiff.

Kathleen M. Powers, Providence, for Defendant.

Before LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

This appeal addresses the legal duties and liabilities of a municipality participating in a state government program that provides repair loans to eligible homeowners. Program regulations require participating cities and towns to inspect the repair work and to certify to the government lender that the work has been satisfactorily completed. The loan proceeds are then disbursed to the contractor that has been hired by the homeowner to do the repair work. The homeowner plaintiffs here claim that the government regulations in question should be construed to create a legally enforceable duty running in their favor and against the participating municipality. They contend that if the municipality fails to detect shoddy repair work at the homeowners' residence when it performs its inspection and certification functions under this program, then the municipality should be liable to the homeowners for any damages they sustain because of the improper repairs. A Superior Court motion justice disagreed with this theory of liability, and so do we. Accordingly we affirm the entry of a summary judgment in favor of the municipal defendant.

### Facts and Travel

The plaintiffs, Kevin and Carol O'Brien, claimed that defendant, the city of Central Falls (the city), negligently failed to detect defective repairs performed on their home by the contractor plaintiffs hired pursuant to a government-sponsored home-repair loan program. We ordered the parties to show cause why we should not decide this appeal summarily. No cause having been shown, we proceed to decide the appeal at this time.

In the fall of 1988 plaintiffs obtained a home-repair loan for their Central Falls residence through the Home Repair and Access Program (program) of the Rhode Island Housing and Mortgage Finance Corporation (RIHMFC), a public corporation of the State of Rhode Island. *See* G.L.1956 § 42–55–4. Pursuant to this program, families with low to moderate incomes could apply for low-interest-rate home-repair loans. RIHMFC administered the program through an Area Home Office (AHO) located in each municipality.

To implement and administer this loan program, the city's Department of Planning and Community Development (planning department) operated an AHO for RIHMFC. The city concedes that its planning department advertised the availability of RIHMFC's loan funds for home repairs, determined plaintiffs' initial eligibility for such a loan, and assisted plaintiffs in filing the appropriate loan-application documents with RIHMFC. It is also undisputed that RIHMFC approved a repair loan to plaintiffs in the amount of $26,250. From a list of suggested contractors provided by the planning department, plaintiffs selected Bruce Construction (Bruce) to repair their home. Under the terms of plaintiffs' loan agreement with RIHMFC, Bruce was to be paid in three installments as it completed the repairs to plaintiffs' home.

After Bruce finished each phase of the repairs, RIHMFC's rules and regulations called for plaintiffs and the AHO to submit a joint disbursement authorization to RIHMFC. The regulations specified that the city's AHO "shall approve the request for construction advances only upon a determination that the contractor costs reflected therein are fair and reasonable and are in accordance with the cost estimates for said repairs or improvements contained in the Application." Furthermore, the regulations mandated that "the [AHO] shall periodically inspect repairs or improvements being made by the contractors to verify that repairs or improvements are being, or have been completed in an acceptable manner * * *."

Construction began in November of 1988. According to plaintiffs, an inspector from the city's planning department periodically inspected the work. After these inspections plaintiffs and a member of the city's planning department signed payment requisitions and sent them to RIHMFC for its final approval and disbursement of the loan proceeds covering the completed repair work. The following language appears above the city inspector's signature on each payment requisition:

"Inspection Report. This is to certify that the work to be paid for with this [partial] [final] disbursement of funds has been inspected and found to be satisfactorily completed in accordance with the approved rehabilitation specifications and any subsequent change orders." (Brackets in original.)

Above plaintiffs' signatures on these same payment requisitions the following language also appears:

"Owner's Authorization for Disbursement of Payment. I (We) hereby accept as satisfactory the work for this [partial] [final] payment is [*sic*] requested, and therefore hereby approve the preparation of a check(s) to be paid to [Bruce Construction]." (First two sets of brackets in original.)

The plaintiffs contended that in signing these documents, the planning department's inspector made representations to them concerning the quality of the work done by Bruce. They also asserted that the city's inspector ignored plaintiffs' complaints concerning certain visually obvious problems with Bruce's work. Following the final disbursement of loan proceeds from RIHMFC and payment to Bruce, plaintiffs claimed that they discovered serious flaws in the repair work, including warped shingles and a leaking roof.

The plaintiffs then filed a complaint in Superior Court, alleging breach of contract and negligence against Bruce and claiming that the city was negligent in its failure to detect Bruce's unworkmanlike repairs to plaintiffs' home. In due course the city moved for summary judgment against plaintiffs, contending that it owed no duty to them or, in the alternative, that plaintiffs had released the city from liability. After a hearing the Superior Court granted the city's summary-judgment motion. The plaintiffs have appealed from that judgment.

### Analysis

The plaintiffs contend that the hearing justice erred in deciding that the city owed no duty to plaintiffs to detect and disclose to them Bruce's faulty workmanship. They argue that the city's duty arose from the loan agreement between plaintiffs and RIHMFC and from RIHMFC's applicable inspection regulations.

The city counters by pointing out that its planning department was not acting as a city building inspector when it examined the contractor's work. Rather, the city argues, it was merely certifying to RIHMFC that the repairs in question had been completed in a manner acceptable to the city and that RIHMFC should therefore disburse loan funds allocated to pay for such work. The city also contends that to impose a duty upon it running in favor of homeowners in a situation like this would create a new and substantial financial burden on municipalities to guarantee the quality of repair work performed by private contractors on private residences. The potential cost and burden of assuming such a duty, it argues, would be a strong disincentive for municipalities to participate in the home-repair program. Finally, the city insists that plaintiffs have released it from any liability by virtue of the language used in section 4 of the rehabilitation contract between plaintiffs and Bruce. That section provides, inter alia, "If any dispute arises between the Contractor and the Owner which cannot be voluntarily resolved, neither the Corporation nor the AHO will become involved in any resulting negotiations or litigation."

■ We review the granting of a motion for summary judgment on a de novo basis, applying the same criteria as the trial court. *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996); *Mallane v.*

*Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 19 (R.I.1995). Only when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's order granting summary judgment. *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996). Furthermore, a litigant opposing a summary-judgment motion has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, conclusory statements, or legal opinions. *Id.*

■ From the transcript provided to us, it appears that the motion justice determined that the city,. through its planning department, owed no legal duty to plaintiffs to detect negligent workmanship.[1] We hold that the motion justice correctly ruled that the city had no contractual or regulatory duty to plaintiffs in these circumstances to warrant the merchantable quality of the repair work performed on their home. The only contracts at issue here are the loan agreement between plaintiffs and RIHMFC and the construction agreement between plaintiffs and Bruce. Although a member of the city's planning department signed the loan agreement as a witness, the city was not a party to either contract. Thus the contracts imposed no duty on the city.

Whether RIHMFC's regulations created a duty running from the city to plaintiffs presents a different question. RIHMFC regulation 6.1.5 requires that "the [AHO] shall periodically inspect repairs or improvements being made by the contractors to verify that repairs or improvements are being, *or have been completed in an acceptable manner* * * *."* (Emphasis added.) Unfortunately,

---

1. There is no indication in the transcript that the motion justice's decision was based in any part on the public-duty doctrine. The motion justice simply stated:

   "[The plaintiff] still has his claim for relief against [Bruce Construction], but I think that Central Falls is off the hook. I don't think that in any event, just to be clear, Central Falls was not functioning in its capacity—or the individuals at Central Falls were not functioning so much as building inspector as they were just supervisors or some sort of evaluators, if you will, of the work, but they were to do that jointly with [plaintiff]. That being the case, [plaintiff] did not prevail on his claim. He had the opportunity to either inspect it on his own, or, indeed, he had the opportunity to get someone skillful in the building trades to carry out an inspection for him. So, the motion for summary judgment brought by Central Falls is granted."

the phrase "acceptable manner" is not defined by the regulations. However, we are of the opinion that the primary purpose of this regulation and the required municipal inspection reports was to protect RIHMFC in lending money to the homeowner for the repair work to be performed on the home. Thus, its principal purpose was not to protect the homeowner from hiring a contractor whose repair work may sooner or later prove to be defective, nor was it intended to give the homeowner the option of suing the city for having failed to discover defects in the contractor's repair work.[2]

Thus we hold that the city, acting as an AHO for a government-funded lending program rather than as a building inspector, did not owe the plaintiffs a duty to insure workmanlike performance by third-party contractors who performed repair work on their home. Any duty owed by the city ran in favor of RIHMFC, not the homeowner plaintiffs. Accordingly the plaintiffs' appeal is denied, and the summary judgment below is affirmed.

WEISBERGER, C.J., and GOLDBERG, J., did not participate.

---

**2.** Although the record is far from clear or exhaustive on this point, it appears that the alleged defects in this situation involved problems with the roof on plaintiffs' home (for example, curled shingles and leaks) that may not have been obvious even to a trained inspector of construction work at the time any inspections were performed.