**Supreme Court**

No. 2014-178-Appeal.
(WC 06-687)

Jo-Ann Albanese                          :

v.                                   :

Town of Narragansett et al.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Jo-Ann Albanese            :

v.            :

Town of Narragansett et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on October 28, 2015, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. The plaintiff, Jo-Ann Albanese (plaintiff or Albanese), appeals pro se from grants of summary judgment by the Washington County Superior Court in favor of the defendants, the Town of Narragansett, David Krugman in his official capacity as Treasurer for the Town, the Narragansett Police Department, and Sgt. Gerald Favreau (Sgt. Favreau) and then-Patrolman (now Lieutenant) Matthew Sutton (Lt. Sutton) in their official capacities as police officers with the Narragansett Police Department (collectively, defendants). Albanese further appeals from the denial of multiple pretrial motions. After examining the memoranda filed by the parties,[1] we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time. For the reasons set forth herein, we affirm in part, vacate in part, and remand to the Superior Court.

---

[1] The parties elected to waive oral argument and rest on their pre-briefing statements.

**Facts and Travel**

Many of the underlying facts of this action stem from an incident recounted by this Court in State v. Albanese, 970 A.2d 1215 (R.I. 2009). On November 11, 2003, Sgt. Favreau and Lt. Sutton were called to the Driftwood Apartment Complex (Driftwood), where Albanese resides in Narragansett, after receiving a report that Albanese had physically assaulted a Driftwood maintenance worker, Thomas Arrico (Arrico). Id. at 1217-18. The officers arrested Albanese, and she subsequently was charged with one count of assault and/or battery upon Arrico and one count of resisting arrest. Id. at 1217, 1218. A District Court judge found Albanese not guilty of resisting arrest but guilty on the other count. Id. at 1217. Albanese appealed her conviction to the Washington County Superior Court. Id. In a jury-waived trial, Albanese centered her defense on her allegation that mold existed at Driftwood; defense counsel questioned Arrico about the mold on cross-examination and called a former Driftwood tenant and a Rhode Island Department of Health official as witnesses to testify on the subject.[2] Id. at 1217-19. The Superior Court trial justice found Albanese guilty of battery but not guilty of assault. Id. at 1219. This Court affirmed the conviction. Id. at 1225.

The circumstances of the 2003 arrest and Albanese's allegations about the presence of mold at Driftwood are the subject of this action. On November 10, 2006, Albanese, acting pro se, filed a multi-count complaint against defendants in the Washington County Superior Court. She alleged assault and battery (count 3) stemming from the purported use of excessive force by Sgt. Favreau and Lt. Sutton. Specifically, she claimed that Sgt. Favreau and Lt. Sutton had injured her when they "drag[ged] her [out] of her car and * * * dragged her with her jacket over

---

[2] The official from the health department testified that Albanese had filed a complaint with his office regarding mold in the housing complex. State v. Albanese, 970 A.2d 1215, 1218-19 (R.I. 2009). He testified that the mold has since been remediated. Id. at 1219.

her head, * * * 200 [feet] (approximately) or so to her apartment in order to put her dog inside her apartment" just before arresting her. She also alleged false arrest (count 2).

Albanese further claimed that defendants had engaged in "gross negligence and/or misconduct" (count 1) by "failing to act in a professional manner, * * * effectively be[coming] [Driftwood's] agents[,] and abus[ing] their power and position" in the ongoing landlord-tenant dispute over the purported mold. She alleged that defendants had intimidated and harassed her in an attempt to dissuade her from making additional complaints about mold. Albanese charged that defendants' alleged failure to address reports of mold constituted "negligence per se" (count 4). Albanese included an additional claim for intentional infliction of emotional distress (count 5), and she sought to recover punitive damages (count 6).

In addition to the case at bar, Albanese previously had brought suit against Driftwood's property management company in 2005, in which she alleged multiple causes of action on account of the mold in her apartment (Driftwood case). The suit subsequently settled. In 2009, the attorney who had represented Albanese in the Driftwood case entered his appearance in the Superior Court on Albanese's behalf in the case before us.

However, the case remained dormant in the Washington County Superior Court for a number of years, until May 2, 2013, when a Superior Court justice imposed a deadline of July 17, 2013 for the close of discovery. On August 29, counsel for Albanese moved to withdraw his representation, citing a breakdown of the attorney-client relationship. The trial justice heard the motion on September 6, at which time Albanese confirmed that she wished to terminate the relationship and intended to represent herself. The court scheduled December 10 for trial, ordered defendants to file any dispositive motions no later than October 11, and gave Albanese until November 8 to file her objection with supporting memorandum to defendants'

dispositive motions (September 6 order). On September 20, Albanese, by letter to the court, alleged that she recently had been diagnosed with a medical condition and that surgery was imminent; she requested a continuance until after the surgery. One week later, at a status hearing on September 27, Albanese informed the court that her surgery had not yet been scheduled. The trial justice denied Albanese's request to postpone the November 8 filing deadline but agreed to revisit the issue at the next status hearing.

On October 10, 2013, in accordance with the September 6 order, defendants filed a motion for summary judgment. In support of the motion, defendants provided the initial police report and Albanese's responses to defendants' interrogatories.[3] The parties reconvened on October 18 for a status hearing. Albanese told the court that her surgery still had not been scheduled but that she intended to meet with her surgeon on November 8. The trial justice slated November 15 as the date for the next status hearing and extended the deadline for Albanese's response to the motion for summary judgment to November 29.

At the status hearing on November 15, 2013, Albanese notified the court that the surgery had been performed on November 4. She requested an extension of the November 29 filing deadline because, she contended, that she had been too ill to work on her objection. Although the trial justice stressed the need for the nearly eight-year-old case to proceed, she granted Albanese a new deadline of December 13. The trial justice cautioned, "There will be no further continuances."

On December 6, Albanese filed a written objection to the motion for summary judgment which indicated that a memorandum and supporting documentation were forthcoming. With her objection, she filed an "Emergency Motion for an Extension of Time/Continuance in which to

---

[3] Albanese answered the interrogatories while she still was represented by counsel.

Complete [Plaintiff's] Answer to Summary Judgment and a Continuance for Hearing on Summary Judgment." Albanese stated that she needed more time because she had learned that "no discovery[] [was] even asked for by her previous attorney, no [depositions], no affidavits, no interrogatories[,] absolutely nothing was done." Notwithstanding the order that had cut off discovery six months earlier, Albanese averred that she had attempted to request discovery materials from defendants but that they had refused because the deadline had passed.

The trial justice denied the request to reopen discovery but granted another extension to January 17, 2014 for Albanese to file her objection.[4] In so doing, she cautioned Albanese: "[Y]ou have one last opportunity to file your objection to the motion for summary judgment. One last opportunity. I absolutely am not even going to entertain anything more on the record until the date of the hearing." Albanese did not comply; she peppered the court with a series of filings, including a letter addressed to the trial justice, seeking more time. The January 17 deadline passed without Albanese filing additional materials in objection to defendants' motion for summary judgment.

The parties reassembled in Superior Court on January 31, 2014. The trial justice denied the multiple motions Albanese had filed since the previous hearing and indicated that she would hear the parties on the issue of summary judgment. She explained that, although Albanese had not provided written documentation in support of her opposition to the motion, the pro se litigant still had the opportunity to provide an oral response. After hearing from both parties, the trial justice granted summary judgment on all counts. This timely appeal followed.

---

[4] We note that the parties have not provided the Court with a transcript of this hearing, which took place on December 12, 2013. Although the transcript is not before the Court, the Superior Court justice referenced the hearing in detail at a subsequent hearing on January 31, 2014. It is from the trial justice's recitation on January 31 that we base our retelling of the events that transpired at the hearing on December 12, 2013.

Before this Court, Albanese assigns error to the denial of her motions to reopen discovery, the denial of her motions for an extension in time to file a memorandum in opposition to summary judgment, the denial of her motion to recuse, and the grant of summary judgment in favor of defendants.

## Discussion

### I. Denial of Motions to Reopen Discovery

We first address Albanese's claim that the court erred by denying her multiple motions to request additional materials from defendants long after the discovery phase had passed. This Court consistently has held that "[t]he Superior Court has broad discretion to regulate how and when discovery occurs." Shelter Harbor Conservation Society, Inc. v. Rogers, 21 A.3d 337, 343 (R.I. 2011) (quoting Giuliano v. Pastina, 793 A.2d 1035, 1037 (R.I. 2002)). This Court will not disturb a decision granting or denying discovery, except upon a showing that the lower court abused its discretion. Id. We previously have remarked that, "[o]nce the court enter[s] [a] scheduling order, the parties [become] bound to comply with the sequence and timing for discovery set forth in that scheduling order and subsequent court orders." Malinou v. Miriam Hospital, 24 A.3d 497, 506 (R.I. 2011).

Here, more than six and a half years had elapsed between the time Albanese brought suit in 2006 and July 17, 2013, the court-ordered discovery deadline. The plaintiff had ample time to request materials throughout this period and was represented by counsel at the time discovery closed. She claims that her desire to reopen discovery is because her former attorney had failed to seek allegedly pertinent documents.[5] Nonetheless, Albanese did not move to reopen discovery

---

[5] We do not mean to suggest that Albanese's previous attorney erred or that we would have reached a different conclusion regarding any issue raised on appeal had additional discovery materials been requested.

until several months after she assumed self-representation.  Under the circumstances, we are satisfied that the Superior Court justice did not abuse her discretion when she denied Albanese's motions to resurrect a discovery period that had ended months before.[6]

## II.  Denial of Motions for Continuance

Albanese next claims that the Superior Court justice erred in denying her motions to push back the deadline for filing her opposition to defendants' motion for summary judgment.  This Court recognizes that "manag[ing] [the] trial calendar is among the most difficult of all judicial assignments."  Boucher v. Galvin, 571 A.2d 35, 37 (R.I. 1990).  Accordingly, we afford justices "the widest discretion" in carrying out the demanding task and will upset the denial of a motion for a continuance only upon a showing that the lower court abused such discretion.  Id.

This Court was confronted with a fact pattern similar to the case at bar in DeMascole v. Tatro, 673 A.2d 57 (R.I. 1996).  In DeMascole, the action had been pending in the Superior Court for more than eight years at the time the trial justice set a date certain.  Id. at 60.  When the trial originally was scheduled to begin, the court granted the plaintiff's motion for a three-month

---

[6] Albanese contends on appeal that, on October 18, 2013, the trial justice vacated the entire May 2, 2013 order, including the part pertaining to the July 2013 date marking the end of discovery.  The October 18, 2013 hearing transcript belies this claim:

| "THE COURT: | * * * I am going to vacate at this time the December 10 trial date * * *. |
| "MS. ALBANESE: | [T]he pretrial orders will be changed accordingly? |
| "THE COURT: | I have just vacated the trial date. * * * |
| "MS. ALBANESE: | Okay.  So no pretrial orders go along with that? |
| "THE COURT: | Correct." |

Further, unlike the looming deadline for filing the objection to defendants' motion for summary judgment, the period allotted for discovery had ended months earlier.  There was no reason for the court to retroactively rescind the July 2013 deadline on account of Albanese's impending surgery.

continuance for the purpose of securing the attendance of a witness.  Id.  When the case again was reached for trial, the court granted a second motion to continue the case because the witness still was not available.  Id.  When the plaintiff moved for a third continuance based upon the witness's unavailability, the trial justice denied the motion in light of the length of time the case had been pending, the previous grants of continuances, and the fact that the original trial date had been set three months earlier.  Id. at 60-61.  We concluded that the trial justice acted within his discretion.  Id. at 61.

In the case before us, the Superior Court initially set November 8, 2013 as a deadline for Albanese to file materials in opposition to defendants' motion for summary judgment.  Her September 20, 2013 request to continue the case until after her surgery was premature, because the surgery had not been scheduled and defendants' dispositive motion was not due until October.  However, the court granted her an extension at the next status hearing.  Albanese attests that she had the surgery on November 4, 2013, meaning that she had twenty-five days to work on the memorandum and compile her supporting materials before the surgery—only three days less time than the twenty-eight days initially allotted by the court.  After the surgery, the court twice more extended the deadline at Albanese's request.

Like the action in DeMascole, this case had been languishing in the Superior Court for a number of years and the trial justice had granted multiple extensions.  By the final due date of January 17, 2014, Albanese had had defendants' summary-judgment motion in hand for nearly 100 days—three times longer than the amount of time originally allocated for her to file her objection. Based on these facts, the trial justice acted within the bounds of her discretion.

### III. Denial of Motion to Recuse

Albanese next assails the denial of her motion for the trial justice to recuse herself from the case. In support of the motion to recuse, Albanese argued before the Superior Court that the trial justice had failed to take her seriously as a self-represented litigant. In particular, Albanese attributed to her pro se status the denial of her motions to reopen discovery and the court's refusal, on December 12, 2013, to consider additional motions for extensions in time. Albanese further contended before the Superior Court that the trial justice had encouraged defendants to file a dispositive motion when none had been filed.

We afford the trial justice "considerable discretion" in deciding whether to step away from a case. State v. Romano, 456 A.2d 746, 754 (R.I. 1983). A party moving for recusal must show "that the trial justice had personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his [or her] impartiality seriously and to sway his [or her] judgment." In re Jermaine H., 9 A.3d 1227, 1230 (R.I. 2010). The party carries a "substantial burden" to demonstrate that "facts present such that it would be 'reasonable for members of the public or a litigant or counsel to question the trial justice's impartiality.'" Id. (quoting In re Antonio, 612 A.2d 650, 653 (R.I. 1992)).

We note that, irrespective of her pro se status, Albanese was a recalcitrant litigant whose disruptive behavior ultimately led to her removal from the courtroom by a court deputy. The trial justice tolerated multiple interruptions by Albanese that never would have been allowed from a member of the bar. Contrary to Albanese's assertion of discriminatory treatment, our review of the transcripts before us reveals that the trial justice exercised commendable courtesy and patience in her interactions with Albanese. The trial justice went to great lengths to make exceptions for Albanese's behavior, to elucidate the litigation process, and to help Albanese

clarify her arguments before the court.  In so doing, the trial justice expressed concern about the admitted challenges that pro se litigants face when trying cases that even seasoned attorneys may struggle with and urged Albanese to retain new counsel.  We are satisfied that these comments did not evidence discrimination.  To the extent that Albanese suggests her pro se status entitles her to anything more than fairness and courtesy, she is mistaken.

Albanese has failed to support her allegation that the trial justice ordered defendants to move for summary judgment and that this in turn revealed personal prejudice or bias.  Albanese did not submit a copy of the transcript in which the trial justice first broached the issue of summary judgment, and a bare, unsupported allegation is insufficient to meet the heavy burden imposed on a party seeking appellate review on this issue.  Moreover, when the trial justice denied the motion to recuse, she set forth on the record that she had not ordered defendants to move for summary judgment but rather had set a timeline for defendants to file dispositive motions in an effort to move forward this long-stagnant civil action.  See, e.g., Boucher, 571 A.2d at 37 (The court must "maintain a firm schedule * * * in order to keep the flow of trials moving in such manner as to * * * make certain that the cases on the calendar move smoothly toward resolution either by trial or settlement.").  There simply is no evidence to support Albanese's claims before the Superior Court that the trial justice was anything but patiently appropriate and abundantly fair with the pro se litigant.  The motion to recuse is wholly without merit.

On appeal before this Court, Albanese further contends that, after submitting her written motion to the Superior Court on January 13, 2014, but before the January 31 hearing, she learned that the trial justice's husband allegedly works in law enforcement; thus, Albanese concludes he may interact with Sgt. Favreau during the course of his employment.  Based on this allegation,

according to Albanese, the trial justice should have recused herself. Albanese claims that she had not had this purported information available to her before filing, but that she would have raised the issue had the trial justice allowed her to address the court before ruling on the recusal motion. However, because such a decision rests squarely within the Superior Court justice's discretion, the court is not obliged to permit oral argument. See Ryan v. Roman Catholic Bishop of Providence, 941 A.2d 174, 188 (R.I. 2008). And even if Albanese had the opportunity to address the court on the subject, oral argument is not an appropriate forum for raising new issues not previously briefed. See Zinniel v. Commissioner of Internal Revenue, 883 F.2d 1350, 1356 n.8 (7th Cir. 1989).

Nonetheless, Albanese's claim of a conflict based on the trial justice's husband's employment is without merit. Albanese relies on mere conjecture to suggest that Sgt. Favreau may have interacted with the trial justice's husband, and the asserted connection between Sgt. Favreau and the trial justice is so attenuated that any inference of impartiality is fantastical. We live in an era in which both partners to a marriage frequently pursue separate careers. The notion that, standing alone, a trial justice's allegiance rests with her husband's occupation rather than the responsibilities and duties of her position reeks of a bygone age.

### IV. Grants of Summary Judgment

Lastly, Albanese contends that the trial justice erred by granting summary judgment in favor of defendants. This Court views summary judgment as an "extreme remedy" that "should be granted only when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Stewart v. Sheppard, 885

A.2d 715, 719 (R.I. 2005) (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005)). Accordingly, the Court has noted that:

> "The function of the motion justice considering a proposed summary-judgment motion is not to cull out the weak cases from the herd of lawsuits waiting to be tried. Rather, only if the case is legally dead on arrival should the court take the drastic step of administering last rites by granting summary judgment." Mitchell v. Mitchell, 756 A.2d 179, 185 (R.I. 2000).

Still, this extraordinary remedy is appropriate when the nonmoving party relies only on "mere allegations or denials in the pleadings, conclusory statements, or legal opinions" to sustain the action. O'Brien v. Laroche, 711 A.2d 1125, 1127 (R.I. 1998). To ward off summary judgment, the nonmoving party must "set forth specific facts." Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d 417, 424 (R.I. 2009) (quoting Providence Journal Co. v. Convention Center Authority, 774 A.2d 40, 46 (R.I. 2001)).

Reviewing the grant of summary judgment de novo, this Court "appl[ies] the same standards as those used by the trial court." Kinder v. Westcott, 107 A.3d 321, 324 (R.I. 2015) (quoting Hazard v. East Hills, Inc., 45 A.3d 1262, 1268 (R.I. 2012)). Like the trial court, we construe "the evidence in the light most favorable to the nonmoving party," id. (quoting Long v. Dell, Inc., 93 A.3d 988, 995 (R.I. 2014)), and do not "pass[] upon the weight or credibility of the evidence," Reniere v. Gerlach, 752 A.2d 480, 482 (R.I. 2000).

Because Albanese challenges the grants of summary judgment on each of the six counts of the complaint, we address them seriatim. We first consider her dual claim for assault and battery, which alleges the use of excessive force during an arrest by defendant police officers. We analyze this claim through the lens of excessive-force jurisprudence under the Fourth Amendment to the United States Constitution. See Graham v. Connor, 490 U.S. 386, 395 (1989).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons * * * against unreasonable * * * seizures." A police officer's application of excessive force during an arrest violates that right, regardless of whether the force was exercised in good faith. See Graham, 490 U.S. at 396-97. The determination of whether the level of force used by an arresting officer was objectively reasonable—and thus not impermissibly excessive—under the Fourth Amendment demands "a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).

The balancing test of objective reasonableness is inherently "fact-intensive," because it "depends on 'the facts and circumstances of each particular case.'" Newman v. Guedry, 703 F.3d 757, 761 (5th Cir. 2012) (quoting Graham, 490 U.S. at 396). Factors to consider "includ[e] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "In other words, the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (Sotomayor, J.) (emphasis added). Therefore, "[g]iven the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive[-]force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Id.; see also Gregory v. County of Maui, 523 F.3d 1103, 1106 (9th Cir. 2008) ("[S]ummary judgment * * * 'should be granted sparingly' in cases involving claims of excessive force." quoting Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003)).

Turning to the case at bar, we note that the evidence before the Superior Court on summary judgment was sparse. Because Albanese had failed to produce any materials in support of her objection to the motion for summary judgment before the hearing on January 31, 2014,[7] the material before the Superior Court was limited to the documents submitted by defendants— the police report and Albanese's interrogatory responses. Our careful review of the allegations in Albanese's pleading and her answers to the interrogatories reveals that Albanese focuses her excessive-force claim only on the events that transpired from the time she exited her vehicle to when she arrived with Sgt. Favreau and Lt. Sutton at her apartment. Lieutenant Sutton, who recounted this interaction in a narrative contained in the police report, indicated that Albanese had been sitting in her car with her dog at the officers' direction just before the events in question occurred. According to Lt. Sutton:

> "[Sergeant] Favreau * * * advised Albanese that she was going to be arrested * * *. Albanese continued to yell and became more agitated. [Sergeant] Favreau asked [Albanese] if she would like to put the dog in the apartment or leave it in the car for the time being. She continued to shout and after being asked a second time she grabbed the dog by the collar and began to walk toward the apartment. [Sergeant] Favreau and I followed her to her apartment door. She opened the door and began to walk inside."

Albanese tells a different tale. According to the answers Albanese provided to defendants' interrogatories, Sgt. Favreau "yank[ed] [her] out of the car and put [her] jacket overhead. The other officer raised [her] other arm and dragged [her] to [her] apartment." The differences in the accounts are substantial, since Lt. Sutton's narrative does not mention that he

---

[7] After summary judgment was granted in this case, Albanese filed with the court her own sworn affidavit and two letters from physicians, along with a handwritten note. Since these materials were not properly before the Superior Court at the time of summary judgment, we decline to consider them.

and Sgt. Favreau physically escorted Albanese from her car to her apartment—the allegation giving rise to the crux of Albanese's claim of excessive force.

Viewing these competing narratives in the light most favorable to Albanese, we now apply the fact-specific balancing test required for determining whether Sgt. Favreau and Lt. Sutton's actions were objectively reasonable under the circumstances. Here, Albanese was under arrest for simple assault for having "charged" into Arrico. Albanese, 970 A.2d at 1217 n.2. Neither Arrico nor the other witnesses interviewed at the scene by the officers had suggested that Albanese had used a weapon or any other deadly force. There is no evidence that the car was running or that Albanese was attempting to flee at the time of the arrest. Thus, when viewed in the light most favorable to Albanese, the officers had no objective reason to believe that Albanese's presence in the car posed an immediate threat to the safety of the officers or the public or that she was trying to flee the scene. Although Lt. Sutton asserts that Albanese was "agitated" and "shout[ing]," nothing on the summary-judgment record implies that she was trying to resist arrest or threatening physical violence.

Although scant, the evidence in this case raised a genuine dispute as to the propriety of the officers' use of force, if such force in fact was used. These are jury questions. A reasonable jury could accept Albanese's account over the contradictory narrative provided by Lt. Sutton and infer that the level of force applied by the officers was excessive in light of the circumstances. Accordingly, the assault-and-battery claim was not fit for resolution by summary judgment.

None of Albanese's other claims withstand summary judgment. Her false-arrest claim fails because "[t]he existence of probable cause is a complete defense." Horton v. Portsmouth Police Department, 22 A.3d 1115, 1122 (R.I. 2011) (quoting Henshaw v. Doherty, 881 A.2d 909, 919 (R.I. 2005)). An officer has probable cause to arrest a suspect "when the facts and

circumstances within the police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person to be arrested has committed the crime." Id. (quoting State v. Girard, 799 A.2d 238, 249 (R.I. 2002)).

According to Lt. Sutton's narrative, the officers were dispatched to Driftwood after receiving a report that Albanese had assaulted Arrico and fled the scene. Upon their locating Albanese on a nearby street, Albanese immediately approached Lt. Sutton and asked, "Did he call the cops on me? All we did was bump into each other * * *." Shortly thereafter, she changed her story and said it was Arrico who had "'banged' into her." Once back at Driftwood, officers spoke to Arrico and another witness who confirmed Arrico's account that Albanese, unprovoked, had "'rushed past' him, got about three feet in front of him[,] * * * turned and looked at him[,] * * * 'lifted her hand and lunged [her] body [and] shoulders at [him] to knock [him] down.'" As the officers attempted to question the witnesses, Albanese repeatedly yelled and exited her car, despite having been ordered by the officers "to stay by her vehicle."[8] The consistent statements of Arrico and the other witnesses, Albanese's admission—before even being questioned by the officers—that a physical contact between Arrico and herself had occurred, and her erratic behavior all demonstrated the existence of probable cause to arrest Albanese for simple assault. Summary judgment therefore was appropriate.

Albanese's claims of gross negligence and misconduct also fail. She alleges that defendants harassed and intimidated her. However, there is no evidence on the summary-judgment record to back this contention, except her general allegations in the complaint and the

---

[8] Albanese later returned to the vehicle, where she was sitting just before the interaction giving rise to the assault-and-battery claim allegedly occurred.

conclusory statement in her answer to defendants' interrogatories that the civilian defendants "constantly belittled [her] and made fun of [her] handicaps and [her] efforts on behalf of the other tenants who were suffering [as a result of] the mold caused by the management." She identifies no specific instances of harassment or intimidation, nor does she name or describe the persons who allegedly harassed her. There was no triable issue of fact with respect to this count.[9]

The negligence per se claim for defendants' purported failure to uphold and enforce state and municipal codes related to mold fares no better. Albanese's claim is doomed by her own assertions in her pleading and interrogatory answers, in which she assails defendants for condemning her apartment as a result of the mold. This admission, combined with the absence of any evidence beyond her conclusory allegations that defendants failed to respond to her complaints, defeats her claim on summary judgment. Since Albanese's claim for the intentional infliction of emotional distress is predicated on the alleged failure of defendants to respond to her complaints of mold, this claim suffers the same fate.

Albanese's claim for punitive damages similarly fails. Punitive damages are available to a plaintiff "only when a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages, such as when a defendant 'act[s] with malice or in bad faith.'" Pier House Inn, Inc. v. 421 Corp., 812 A.2d 799, 803 (R.I. 2002) (quoting Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993)). Even on her reinstated claim for

---

[9] In her response to defendants' interrogatories, Albanese averred that reports by the building inspector and the Narragansett Police Department constituted the only evidence aside from her interrogatory answers to support her allegation of harassment and intimidation by defendants. Albanese declared that the reports "indicate an obsessive concern with the activities of the handicapped and elderly tenants of the Driftwood Apartments." The reports were not on the record before the Superior Court or even before this Court on appeal. Nonetheless, based on Albanese's description, it is unlikely that they would have furthered her claim even had they properly been before the Superior Court on summary judgment.

assault and battery for excessive police force, Albanese has failed to make such a showing. The arrest was proper. Albanese has alleged only that Sgt. Favreau and Lt. Sutton "yank[ed]" her out of her car, pulled her jacket over her head, and "dragged" her to her apartment. Even when viewed in the light most favorable to Albanese, the actions alleged are insufficient to support an award of punitive damages.

## Conclusion

In conclusion, for the reasons set forth herein, the plaintiff's appeal is sustained in part and denied in part. We vacate the judgment of the Superior Court with respect to its grant of summary judgment on the plaintiff's claim of assault and battery and affirm the judgment in all other respects. We remand this case to that court for further proceedings in accordance with this opinion.

Justice Indeglia did not participate.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Jo-Ann Albanese v. Town of Narragansett et al.

**CASE NO:**              No. 2014-178-Appeal.
                         (WC 06-687)

**COURT:**                Supreme Court

**DATE OPINION FILED:**   March 7, 2016

**JUSTICES:**             Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**WRITTEN BY:**           Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**     Washington County Superior Court

**JUDGE FROM LOWER COURT**:

                         Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

                         For Plaintiff:   Jo-Ann Albanese, Pro Se

                         For Defendants:  Marc DeSisto, Esq.
                                          Brian J. Clifford, Esq.